**Paul L. CARTER, Plaintiff,**

**v.**

**Richard S. SCHWEIKER, Secretary of the United States Department of Health and Human Services, Defendants.**

**Civ. No. 81–4244.**

United States District Court,
S. D. Illinois.

March 23, 1982.

Judith W. Warshawsky, Land of Lincoln Legal Asst. Foundation, Harrisburg, Ill., for plaintiff.

Robert L. Simpkins, Asst. U.S. Atty., East St. Louis, Ill., for defendants.

## ORDER

FOREMAN, Chief Judge:

Plaintiff instituted this action pursuant to 42 U.S.C. § 405(g) (1981), to review the final decision of the Secretary of Health and Human Services (the Secretary) denying his application for disability insurance payments. Section 405(g) provides that this Court has the power to enter, upon the pleadings and transcript of the record, a judgment, affirming, modifying or reversing the decision of the Secretary, with or without remanding the case for a rehearing. Plaintiff filed his complaint on May 26, 1981. Defendant filed his answer, which includes a copy of the administrative transcript, on August 11, 1981. Accordingly, this Court will proceed on the merits of the case.

## FACTS AND ADMINISTRATIVE HISTORY

Plaintiff is a forty year old male, married with dependents living at his home. He has never attended school, nor has he received vocational training. He is totally illiterate. He cannot read and cannot write beyond signing his own name. His past work experience has been unskilled heavy labor. In 1967, while working for a furniture company, plaintiff was injured when a piano fell on his back, thereby fracturing his vertebrae. He was not hospitalized for this condition, but had to use a brace for a substantial period of time. In October 1978, plaintiff reinjured his back when he fell at work. He was not hospitalized for this condition,

but had to use crutches for three weeks. Plaintiff has not worked since this accident.

On December 21, 1979, plaintiff applied for Supplemental Security Income benefits (SSI) on the basis of his disability. His initial application was denied and a request for reconsideration was filed on February 26, 1980. On reconsideration, the Social Security Administration affirmed its denial of the claim, finding that the claimant was not disabled under 42 U.S.C. § 423(d), which provides:

(d)(1) The term "disability" means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

(2) For purposes of paragraph (1)(A) ___ (A) an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work...

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

On April 8, 1980, plaintiff requested a hearing, which was subsequently held on May 8, 1980, before Administrative Law Judge (ALJ) Tom D. Capshaw. Plaintiff was not represented by counsel at this hearing. Subsequent to the hearing, the ALJ referred plaintiff to a consultive orthopedic surgeon, Dr. Willis Pugh, whose report was received into evidence on June 25, 1980.

· The ALJ found by order dated July 29, 1979, that plaintiff is illiterate and that his past work history involved heavy unskilled labor; that he suffers degenerative arthritis of the lumbar and thoracic spine, lumbosacral sprain, and osteoarthritis of the hands; that he is unable to perform his past relevant work but retains adequate residual functional capacity to perform at least sedentary work; and that he is not disabled according to 20 C.F.R. § 416.913 (1981) and 20 C.F.R., subpart P, Table No. 1 of Appendix 2, Rule 201.23 (hereinafter Appendix 2, Table No. 1).

Plaintiff timely filed a request for review by the Appeals Council. A memorandum was submitted by plaintiff's treating physician, Dr. Arcuino, together with additional medical evidence and an affidavit in support of plaintiff's claim for review.

On April 13, 1981, the Appeals Council denied plaintiff's request for review on the grounds that there was no basis for granting the request for review under Section 416.1470 of Social Security Administration regulations No. 16, 20 C.F.R. § 416.1470, which provides:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

Accordingly, the Appeals Council's denial of plaintiff's request for review became the

final decision of the Secretary. Within the time period prescribed by 42 U.S.C. § 405, plaintiff instituted the present action.

## SUMMARY OF MEDICAL EVIDENCE

Plaintiff began treatment with Dr. Jerry Felts, a chiropractor, in March of 1979. He has continued this treatment to the present time, meeting with Dr. Felts a minimum of two to three times a week. Dr. Felts diagnosed plaintiff's condition as chronic lumbosacral involvement with the entire lumbar spine rotation and narrowing of the L–1, L–2, and L–3 disc spaces. Dr. Felts also found that plaintiff's range of motion in the lumbar spine was restricted in extension, flexion, lateral rotation and in bending of the legs; concluding that plaintiff will receive only symptomatic response and will always have chronic back problems and should be considered for total disability.

Plaintiff was informed by the Social Security Office that Dr. Felts' information was insufficient to support his application for benefits. Accordingly, plaintiff went to see Dr. H. Andrew Cserny, a physician, in January of 1980. Dr. Cserny's examination of plaintiff was cursory. He merely talked to the plaintiff, asked him to bend over, and tested his reflexes. Dr. Cserny found that plaintiff suffered from chronic back strain and pain in his lower back, that plaintiff's reflexes and ambulation were normal and that there was no indication of atrophy. Dr. Cserny reported that the straight leg raising test was normal to 90°, the range of motion of the cervical spine was normal and the range of motion of the lumbo-sacral spine was limited to 75° flexion and 15° extension. Paravertebral muscle spasms were not noted. On the Physical Capacities Evaluation (supplied by the Social Security Office), Dr. Cserny indicated that plaintiff was capable of performing light work and that he could climb, bend, stoop and operate foot controls frequently. On his report, Dr. Cserny noted that "this man needs evaluation by an orthopedic surgeon." (Tr. 120).

In February of 1980, plaintiff began seeing Dr. Arcuino, who continues to be his treating physician. In a report dated May 2, 1980, Dr. Arcuino described plaintiff's condition as recurrent lumbo-sacral pain, since 1965, which is aggravated by lifting and bending. Moderate tenderness was found in the lumbo-sacral spine area and straight leg raising was limited to 20° bilaterally with pain. Deep tendon reflexes were hyperactive and the sensations were found to be intact. An x-ray examination of the lumbo-sacral spine on February 20, 1980, revealed moderate dextroscoliosis and hypertrophic osteoarthritic spurring. Dr. Arcuino diagnosed his condition as chronic lumbo-sacral sprain with intermittent acute exacerbation secondary to osteoarthritis.

Plaintiff was referred by the Social Security Administration to Dr. Willis Pugh, a Board certified specialist of orthopedic surgery. A consultative examination took place on May 28, 1980, during which Dr. Pugh found 50% restricted flexion of the thoracic and lumbar spine, about the same of the extension of the lumbar spine, that plaintiff walked with his back in a mildly stooped position and complained of pain in the lower back, as well as in the lower thoracic and upper lumbar region, and that plaintiff's reflexes were normal. X-rays were taken of the lumbar spine (multiple views) and additional views were also taken of the lower thoracic and upper lumbar region. The x-rays revealed an old compression fracture with moderately advanced degenerative arthritic changes and also advanced arthritic changes about the rest of the lumbar spine. Dr. Pugh found some osteoporosis present. The lumbo-sacral joint region showed some increase in the lumbo-sacral angle, with very mild osteoporosis, but revealed about 25% narrowing of the lumbo-sacral joint space due to degenerative arthritis.

Dr. Pugh also noted that plaintiff complained of pain in both hands and of tenderness about the distal interphalangeal joints of his fingers, especially on his left hand. Dr. Pugh found large Heberden's nodes about the distal interphalangeal joints of his fingers.

Dr. Pugh diagnosed plaintiff's condition as moderately advanced degenerative ar-

thritis of the lower thoracic and lumbar spine, with degenerative arthritis or osteoarthritis involving the hands. He further stated:

This patient, in my opinion, is disabled for doing strenuous physical exertion such as pushing, pulling or being on his feet for very long periods of time, or for lifting or bending and stooping, or for sitting for very long periods. He also has difficulty using his hands for very long periods of time or doing finer movements due to the changes in his interphalangeal joints. The prognosis for improvement, I would think, would be very poor (Tr. 132).

## DISCUSSION

After reviewing the record, this Court believes that the ALJ's decision was supported by substantial evidence based on the record as a whole. Therefore, plaintiff's request to reverse the Secretary's decision is hereby DENIED. However, sometime after the hearing, plaintiff submitted new evidence which the Appeals Council did not give sufficient consideration. Accordingly, this Court believes that the ALJ should have this new evidence in determining plaintiff's disability claim.

Plaintiff's counsel argues that because plaintiff was unrepresented at the hearing, the record was not fully developed, and, consequently, the hearing was unfair. For reasons discussed below, this claim must fail.

### A. SECRETARY'S DECISION.

The Secretary found that although plaintiff was unable to perform any of his previous jobs, he retained adequate residual functional capacity for sedentary work. The Secretary's decision must be upheld on judicial review if it is supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); see, McNeil v. Califano, 614 F.2d 142, 145 (7th Cir. 1980); Davis v. Califano, 603 F.2d 618, 624–25 (7th Cir. 1979). Consequently, the scope of review is limited. The Court is not authorized to substitute its judgment for that of the administrative agency.

Such determinations will not be set aside by courts if there is evidence to support them. Even though, upon a consideration of all the evidence, a court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment. Swayne & Hoyt Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 81 L.Ed. 659 (1937).

The Supreme Court has defined substantial evidence to mean "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

It is axiomatic under the Act that plaintiff bears the burden of proof to establish his entitlement to disability insurance benefits. See, Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970). It is equally well established that plaintiff has carried his burden if he can show that he is unable to perform his past jobs due to his disability. Once plaintiff shows he can no longer perform his past jobs, the burden shifts to the Secretary to produce evidence that will justify a finding that there is some other kind of substantial gainful employment that plaintiff is able to perform. See, Smith v. Secretary of HEW, 587 F.2d 857, 861 (7th Cir. 1978); McNeil v. Califano, 614 F.2d 142, 145 (7th Cir. 1980).

The ALJ found that plaintiff could no longer perform his past jobs (Tr. 38) and pursuant to 20 C.F.R. § 416.972, the burden shifted to the Secretary to show that plaintiff could engage in substantial gainful activity.

Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity.* Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities.* Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972.

█ The Secretary met this burden by applying plaintiff's vocational experience, education, age and the heaviest type of work plaintiff can do (hereinafter four factors) to Appendix 2, Table No. 1, which mandates a finding that plaintiff is not disabled. In a recent case, Judge Posner, speaking for the Seventh Circuit, found that proper use of Table 1 of Appendix 2 constitutes substantial evidence.

Congress has given the Department of Health and Human Services very broad authority to promulgate regulations. "The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence..." 42 U.S.C. § 405(a). We think it was not only lawful under this grant of power, but highly appropriate, for the Secretary to try to streamline the adjudication of social security disability cases and bring about some greater uniformity in the results of these adjudications... The Department of Health and Human Services has this knowledge and can both supplement and draw upon it in a rule-making proceeding. It was entitled to substitute an institutional judgment for the *ad hoc* judgments of administrative law judges based on the testimony of vocational experts and other witnesses and on their own limited and variable knowledge of the labor market.

*Cummins v. Schweiker,* 670 F.2d 81, at 83 (7th Cir. 1982).

Concerning Table No. 1 of Appendix 2, § 200.00(a) of Appendix 2 provides that "each of these findings of fact is subject to rebuttal and the individual may present evidence to refute such findings." In this case, all of the findings of fact with respect to plaintiff's vocational experience, education and age are in plaintiff's favor and cannot be refuted. However, the major issue is whether plaintiff can perform sedentary work (the fourth factor). The evidence as a whole before the ALJ supports his determination that plaintiff retains sufficient residual functional capacity to perform sedentary work (fourth factor). Accordingly, the ALJ was correct in using Table No. 1 of Appendix 2. New evidence, however, brings this determination into question.

Section 201.00(h) of Appendix 2 provides that:

A finding of disability is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work.

Appendix 2, § 201.00(h). Plaintiff's impairments do not meet the criteria of a specific rule [the listings in Appendix 1, especially § 1.00 *et seq.*] and, thus, the question turns on whether plaintiff can perform a full range of sedentary work.

Sedentary work involves:

... lifting not more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

In addition, basic work activity is described as:

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitude necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, coworkers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921.

Furthermore, "To determine the physical exertion requirements of work in the national economy, we classify jobs as 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy.' Those terms have the same meaning as they have in the *Dictionary of Occupational Titles*, published by the Department of Labor." 20 C.F.R. § 404.1567. The *Dictionary of Occupational Titles* defines sedentary work as:

Sedentary work implies a capacity to sit for at least 6 hours in an 8 hour work day and to lift up to 10 pounds maximum. The ability to walk and stand up to approximately ⅓ of the work day (2–3 hours per day per 8 hour day) is also implied in sedentary work.

The aforementioned definitions of sedentary work, and the basic work activities, should be considered by the ALJ in determining whether plaintiff's impairments fall within the exception provided in Appendix 2, § 201.00(h). As mentioned above, the evidence before the ALJ conformed with these definitions, and, thus, the ALJ's use of the Table was correct. Plaintiff's new evidence, however, does not, in part, conform to the aforementioned definitions. The Appeals Council believed that this new evidence was insufficient to support plaintiff's request for review; this Court disagrees.

**B. NEW EVIDENCE.**

■ Plaintiff's treating physician, Dr. Arcuino, submitted a Physical Capacities Evaluation, dated March 9, 1981, which concluded that plaintiff could perform, with one exception, all of the requisites of sedentary employment. With respect to the requirements for sedentary employment, Dr. Arcuino found that, first, plaintiff can occasionally lift 26–50 lbs. Second, that plaintiff can carry up to 5 lbs. frequently, and can use his hands for repetitive actions such as simple grasping, pushing and pulling of arm controls, and fine manipulations. Third, that plaintiff can occasionally reach, bend, crawl and climb. Fourth, that plaintiff can stand for three hours and walk for three hours in an eight hour day, but only one hour at a time.

Dr. Arcuino's evidence clearly satisfies the aforementioned requirements. However, according to the *Dictionary of Occupational Titles*, sedentary work implies a capacity to sit for at least 6 hours in an 8 hour work day. Dr. Arcuino found that plaintiff can only sit for a total of 3 hours in an eight hour day and only for one hour at a time.

Under the Act:

If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

20 C.F.R. § 416.1470(b). The Appeals Council did not find the new evidence sufficient to warrant a review of the case. This Court believes, however, that because sitting is one of the major requirements of sedentary work, the deviation between 3 and 6 hours is sufficient to warrant remand to the ALJ to determine whether this new piece of evidence, in regard to the record as a whole, supports plaintiff's disability claim.

It should be noted that:

Where the findings of fact made with respect to a particular individual's voca-

tional factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled... Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations.

Appendix 2, § 200.00(a).

Accordingly, the ALJ should take into consideration this section and, also, § 201.-00(h) of Appendix 2 in determining whether plaintiff is disabled.

### C. PLAINTIFF'S ATTORNEY.

Plaintiff's recently obtained attorney argues that as a consequence of plaintiff's not being represented at the hearing, the record was not fully developed because the ALJ failed in his duty to:

(1) fully develop the evidence in regard to pain,

(2) fully develop the record in regard to the nature and degree of plaintiff's impairment of his hands, and

(3) elicit testimony from the plaintiff concerning the nature and purpose of his examination by a one-time examining physician, Dr. Cserny, thereby incorrectly concluding that Dr. Cserny was a treating physician.

When plaintiff is unrepresented by counsel, the ALJ has a duty to fully develop the evidence.

While hearings on disability claims are not adversary proceedings, (citation) where the disability benefits claimant is unassisted by counsel, the ALJ has a duty "scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts..."

*Smith v. Secretary of HEW*, 587 F.2d 857, 860 (7th Cir. 1978).

It is equally important to note, however, that:

> ... it is mere speculation to insist that legal representation is necessary to ensure a fair and impartial hearing for the claimant. Absent a showing of clear prejudice or unfairness in the proceeding, lack of representation by counsel is not a sufficient cause for remand.

*Sykes v. Finch*, 443 F.2d 192, 194 (7th Cir. 1971).

First, plaintiff claims that the ALJ failed to fully develop the evidence in regard to the extent and nature of plaintiff's pain. A review of the transcript, however, shows otherwise. The ALJ elicited from plaintiff the fact that he had constant pain in his back and legs which generally remained at about the same degree (of pain) and that he had constant numbness in his right leg. The ALJ also asked plaintiff if anything made the pain better or worse and if he had pain anywhere else. Plaintiff responded to both questions in the negative. Although it has been held that "[i]t is insufficient (for the Secretary) to argue that the claimant did not present all possible evidence favorable to her case," *Tillman v. Weinberger*, 398 F.Supp. 1124, 1128 (N.D.Ind.1975), the new evidence (plaintiff's affidavit and treating physician's Physical Capacities Evaluation) submitted to the Appeals Council does not on the issue of plaintiff's pain, warrant remand to the Secretary.

With respect to his first claim, plaintiff's counsel also argues that had the ALJ fully developed the evidence in regard to pain, the ALJ would have had such evidence before him as where it hurts, what brings it on, and whether lying down helps. Yet, plaintiff's affidavit, submitted after attaining counsel, neither mentions nor describes any pain in plaintiff's back or legs; it only describes, and in great detail, the pain in his hands. This Court can only conclude that because of the failure to submit new evidence, the pain in plaintiff's back and legs was fully developed at the hearing.

Second, plaintiff claims that the ALJ failed to consider the impairment of plain-

tiff's hands and that this impairment prevents plaintiff from engaging in a full range of sedentary work. A review of the ALJ's decision, and the record as a whole, indicates otherwise. The ALJ cannot be faulted for failing to elicit evidence regarding pain in plaintiff's hands because the ALJ specifically asked plaintiff if he had any other pains and plaintiff expressly said no. Also, it was the ALJ who requested an additional examination by an orthopedic surgeon. Furthermore, plaintiff now claims that his hands ache constantly, yet his treating physician, who certainly is aware of plaintiff's pain, has recently concluded that plaintiff can repetitively use his hands for simple grasping, pushing and pulling of arm controls and fine manipulations. Accordingly, plaintiff's second claim must fail.

Regarding plaintiff's first two claims, plaintiff additionally argues that new evidence, concerning medication prescribed to plaintiff after the hearing, greatly changes the weight of evidence in regard to plaintiff's pain. At the time of the hearing, plaintiff was taking Clinoril two times a day. Sometime after the Administrative Hearing, plaintiff's treating physician prescribed Clinoril two times a day, Flexeril two times a day, Tylenol 3 with Codeine every four hours, and cortisone shots once a month, or more frequently, as needed. Plaintiff is currently being treated with Clinoril 200 mg. two times a day, Flexeril 10 mg. up to eight times a day, as needed, Empracet No. 4 four times a day, and Ostrolate I.M.

This evidence is clearly material to the issue of the severity of plaintiff's pain and it makes his testimony concerning pain much more credible. Accordingly, the ALJ should also consider this evidence (new medications), in regard to the record as a whole, in determining whether plaintiff is disabled.

Third, plaintiff claims that the ALJ incorrectly characterized evidence submitted by a one-time consulting physician as that of a treating physician, thereby giving improper weight to this evidence.

There has been some confusion in the past, in both this district and others, concerning the weight accorded a treating physician's evidence. In the past, the Seventh Circuit has generally held that:

> Once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once.

*Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir. 1977); *see also, Carver v. Harris*, 634 F.2d 363, 364 (7th Cir. 1980). Recently, the Seventh Circuit has clarified the issue, stating that the mere fact that a physician happens to be a treating physician does not, per se, entitle his evidence to controlling weight.

> [Claimant] particularly complains of the ALJ's refusal to defer to the judgment of [claimant's] personal physician. It is true that this physician had examined [claimant] more extensively than anyone else; but as [claimant's] personal physician he might have been leaning over backwards to support the application for disability benefits; therefore the fact that he had greater knowledge of [claimant's] medical condition was not entitled to controlling weight... A trier of fact is not required to ignore incentives in resolving issues of credibility.

*Cummins v. Schweiker*, 670 F.2d 81, at 84 (7th Cir. 1982).

This Court believes that the keystone of the *Cummins* decision, that "a trier of fact is not required to ignore incentives in resolving issues of credibility," should be considered in light of the fact that the Secretary must take into consideration the medical findings and other evidence that support the physician's statement (*see,* 20 C.F.R. § 404.1527) and that the weight accorded a physician's evidence "depends on the degree to which it is supported by specific and complete clinical findings." *Griffin v. Weinberger*, 407 F.Supp. 1388, 1395 (N.D.Ill.1975), *aff'd*, 539 F.2d 712 (7th Cir. 1976). Thus, should the ALJ determine that the treating physician's evidence is credible, the ALJ may give it controlling

weight because of the treating physician's greater knowledge of plaintiff's conditions and circumstances. On the other hand, should the ALJ determine that the treating physician's evidence is not credible, the ALJ is not required to give it controlling weight.

Applying this analysis to the matter before this Court, it is clear that the ALJ placed great emphasis and weight on Dr. Cserny's evidence, yet the ALJ was unaware that Dr. Cserny was a consulting physician, not a treating physician, and that his examination was only cursory. Furthermore, the ALJ's decision was entered prior to the decision in *Cummins*, when the treating physician's evidence was entitled per se to greater weight. Thus, there may have been a credibility problem, concerning Dr. Cserny's evidence, of which the ALJ was unaware. Also, in light of *Cummins*, there may be a credibility problem concerning the new evidence, and, also, the old evidence, submitted by Dr. Arcuino. However, with these possible problems in mind, this Court believes that the record as a whole (before the ALJ) supported the ALJ's conclusion that plaintiff was not disabled.

This Court has pointed out these problems for two reasons. First, because this Court sees no good, on remand, in allowing the ALJ to be under any false impressions. Second, to alert the ALJ of Dr. Cserny's true status and, in light of *Cummins*, to forewarn the ALJ of the new weight accorded a treating physician's evidence.

For the above reasons, plaintiff's complaint to reverse the Secretary's decision is hereby DENIED. However, because sufficient new evidence has been submitted, the matter is hereby REMANDED to the Secretary, but only on the following issue:

1. Determination of the issue of disability with proper consideration given to:

a. The Definition of sedentary employment provided in the *Dictionary of Occupational Titles* ;

b. the credibility of Dr. Cserny's evidence and the credibility of Dr. Arcuino's old, and newly submitted, evidence; and

c. the new medications prescribed to plaintiff as effecting the credibility of plaintiff's claim of pain.

IT IS SO ORDERED.